## E. H. WINANS v. F. H. McCABE.

### Decided December 6, 1905.

**1.—School Land—Excess—Application to Purchase.**

One applying to purchase an entire section of school land placed on the market as containing 533 acres and making his payment and executing his obligation for deferred payments at the due price for that acreage, and whose application, after it was awarded to him, by resurvey, was suspended upon discovering that the section contained 1191 acres, was recognized as purchaser of the entire tract on payment and execution of a new obligation based on the acreage as resurveyed. Held, that his title as purchaser prevailed over that of a subsequent applicant for purchase of the excess.

**2.—Same—Purchase of Excess.**

It seems, following Willoughby v. Long, 96 Texas, 194, that an application to purchase the excess in a section of school land sold to another, before the excess has been ascertained by the Land Commissioner and segregated from the part already sold, is premature, and confers no title.

**3.—Evidence—Certificate of Land Commissioner.**

An explanation in the certificate of the Land Commissioner that a name and date given under the head of "remarks" signified the time when and to whom the section of school land mentioned had been sold was admissible to indicate that his certificate meant that the land had been sold, and not that it was still on the market.

**4.—Same—Certificate Admissible in Part.**

Where objection is made to the admission of a certificate by the Land Commissioner as a whole, and it is admissible to show some of the facts certified, it is immaterial that it embraces other facts or conclusions which could not be properly shown by his certificate.

**5.—Evidence—Harmless Error.**

Where defendant's title to land in controversy was established by proper and uncontradicted evidence the admission of improper evidence to support it was not ground for reversal.

Appeal from the District Court of Coke County. Tried below before Hon. J. W. Timmins.

*Brightman & Upton* and *B. W. Rimes*, for appellant.—The application of plaintiff was valid and should have been admitted in evidence. Batts Anot. Statutes, art. 4218f.

The certificate of the commissioner was not admissible in evidence for the purpose of proving the sale of the land to the defendant, and was but the conclusion of the commissioner based upon the many steps required of applicants in the purchase of school land. Acts of 1901, p. 293; Hamilton v. Macauley, 65 S. W. Rep., 205; Boaz v. Powell, 69 S. W. Rep., 976; Knapp v. Patterson, 12 Texas Ct. Rep., 466.

The certificate was not the best evidence of the facts therein contained, was not admissible to show a sale, was but the conclusion of the Commissioner, and was a certificate of facts that were not archives of the General Land Office.

An application to purchase school land in multiples of less than 80 acres is invalid and void, unless the application is for the purchase of the entire section. Batts' Statutes, art. 4218f.

An application and obligation to purchase school land, becomes effective when filed in the General Land Office, and if said application and obligation is invalid, when the same is so filed, no acts done or performed can afterwards validate said application and obligation. Batts' Statutes, art. 4218j; Gracy v. Hendrix, 93 Texas, 30.

The attempted purchase of the defendant, McCabe, being void the court should have rendered judgment for the plaintiff.

*Hill & Lee,* for appellee.—An application to purchase an indefinite part of a survey, as the excess therein, before the Commissioner of the Land Office has set it apart or attempted to set it apart as the excess thereof, is void, and confers no rights on the applicant. Rev. Stats., art. 4218f, 4274 and 4275; Willoughby v. Long, 96 Texas, 194.

When appellant introduced in evidence the revised list sent out under the Act of 1901, to show that the land was on the market for sale at the date of his application to purchase, and offered no other evidence to show a classification and appraisement, the appellee had the right to show by the certificate of the Commissioner that he did not by that list place the land which had been previous thereto sold or patented, on the market for sale. Rev. Stats., art. 4218c, 4218e, 4218g; Acts, 1901, p. 292; Briggs v. Key, 71 S. W. Rep., 43.

The certificate being of the facts shown by the papers, documents and records of the Land Office was admissible in evidence. Rev. Stats., art. 4218p, 2308; Talbert v. Dull, 70 Texas, 679; Holmes v. Coryell, 58 Texas, 680. The doctrine of Gracy v. Hendrix, 93 Texas, 26, is modified in Steward v. Wagley, 68 S. W. Rep., 297; Nesting v. Terrell, 97 Texas, 18; Faucett v. Sheppard, 75 S. W. Rep., 538; Wickesser v. Lewis, 79 S. W. Rep., 355.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title for 1191 acres, brought by the appellant against the appellee on the 22d day of September, 1903. The land is described in the petition as being section 16 in block W, located by virtue of certificate No. 2/1553, issued to the Texas & Pacific Railway Company. There is a prayer in the alternative that if the plaintiff is not entitled to recover the whole of the 1191 acres, then he prays for judgment for all of the section of land in excess of 533 2-5 acres, to wit, 657 3-5 acres. There was a trial before the court without a jury and judgment rendered against the appellant in appellee's favor.

We find the following facts: It is agreed that both plaintiff and defendant were the legal owners of the land claimed by them as their home section, and described by them in their application to purchase the land in controversy, and that they both resided on their respective home sections at the time they made application to purchase the land in suit, and have continued their residence since said time; and it was also agreed that the land in controversy was within a five miles radius of the home sections of both plaintiff and defendant, and that both were over twenty-one years of age at the time that they applied to purchase the land in controversy, and qualified to purchase the same under the law. That at the time the plaintiff made his application to purchase

said land, he paid to the county clerk of Coke County 1-40 of the purchase money, and that the same was transmitted to the State Treasurer by the clerk; and it was agreed that at the time the defendant made his obligation to the State, he paid to the State Treasurer 1-40 of the purchase money for the land in suit.

Plaintiff introduced in evidence certified copy of the original field notes of the survey in controversy, dated April 2, 1879, which showed that the survey contained 533 4-10 acres. He also introduced certified copy of the corrected field notes of the land in controversy from the land office, dated May 3, 1893, which showed that the section of land in controversy contained 1191 acres, and introduced a certificate from the Commissioner of the Land Office to the effect that it appeared, from the documents, papers and files of his office, that, according to the corrected field notes, dated May 3, 1893, the survey contained 1191 acres, and was approved and passed as correct on the map of Coke County for that quantity August 11, 1893.

Plaintiff introduced the original classification and appraisement of school land in Coke County sent to him by the Commissioner of the Land Office and filed in the county clerk's office on the 3d day of May, 1901, which showed that the section in controversy was classified as dry grazing land and appraised at $1 per acre, and that it contained 1191 acres.

Plaintiff introduced his application to purchase the land in controversy, which was dated September 22, 1903, as additional lands to his home section, which application was in the terms required by law; and also introduced his obligation to the State for the unpaid purchase money. The application was for the purchase of the entire section, containing 1191 acres, and the obligation corresponded with the application in this respect. The application was filed in the office of the county clerk of Coke County on September 22, 1903, was duly recorded and filed in the General Land Office September 24, 1903, and was marked "rejected" September 28, 1903, by the Commissioner of the Land Office.

It is agreed that the plaintiff made the payments required by law on his application.

The appellee's evidence is as follows: An application to purchase the land in suit, dated February 8, 1901, which describes the land as section No. 16, block W, certificate 2-1553, grantee, Texas & Pacific Railroad Company, containing 533 2-5 acres, price per acre $1, and classified as dry grazing land. The application contained the proper affidavit required, which application had attached to it two obligations, payable to the State of Texas which described the land as *all* of section 16, block No. W, certificate No. 2-1553, Texas & Pacific Railroad Company, in Coke County, Texas. The first note or obligation attached to the application was payable to the State of Texas in the sum of $519.12, and it is agreed that this was the note that was originally made and accompanied the application of February 8, 1901. The second obligation was the same as the first, with the exception that it was for the sum of $1,161.23. This obligation was pasted to the application, and it is agreed that this last obligation was not executed by the appellee McCabe and filed in the Land Office until March 11, 1901, at which date it was filed in the office, and was endorsed on the back of the application by the Com-

missioner, Awarded, 3-23-01. We construe this word, together with the figures just stated, to mean that the excess in the survey was awarded to appellee on the 23d day of March, 1901.

There was next introduced in evidence the certificate of award sent appellee by the Commissioner of the Land Office, which is as follows: "Austin, Texas, 3-23-01. F. S. McCabe, Robert Lee, Texas. This is to notify you that the following described land has been awarded to you, as per your application to purchase under Act approved April 16, 1895, as amended by Act of May 19, 1897. This sale dates to you 2-11-01 (which expression we construe to mean that the sale of the excess would be considered by the Commissioner as dating back to the 11th day of February, 1901), section 16, block W, certificate 2-1553, Texas & Pacific Railroad Company, 533 2-3 acres Coke County."

There was next introduced in evidence the following letter from the Commissioner of the Land Office, of date March 1, 1901, to appellee McCabe: "You are advised that your application for sections 16 and 78 in block W, T. & P. R. R. Co., in Coke County, filed in this office 2-11-01, stands suspended, for the reason that section 16 contains 1,191 acres. Hence we will have to ask that you make a new obligation if you want all of the survey, for $1,161.23, and send an additional $16.09 to the State Treasurer as first payment, or make a new application and obligation, and apply in multiples of 80 acres, as you have applied for 533 2-5. We can not sell that amount to you unless we sell all of the unsold part of the survey. If you make obligation for the whole amount as above stated, date the same with your application, which is February 8, 1901. You will also be required to file affidavit that you are over twenty-one years of age. When you write us in regard to the matter, please refer to your suspended application."

There was next introduced a letter of date March 6, 1901, to the Commissioner of the Land Office from appellee McCabe, in reply to the above letter, as follows: "Enclosed find new obligation of me to purchase the land therein fully described in the obligation, for I want to purchase all of section 16. Also find my affidavit to the effect that I am over twenty-one years of age. And further I desire to state to you that I this day mailed to the State Treasurer the $16.09 that you stated would be necessary to complete the first payment thereon. See your letter to me dated March 1, 1901, and suspended application. Hoping that this may be sufficient, but in case there is anything lacking, please write me at once at Robert Lee, Texas, and I will at once respond to same."

Appellee next introduced a letter of January 30. 1903, from the Commissioner of the Land Office to the State Treasurer, as follows: "You are advised that as per corrected field notes, section 16, block W, T. & P. R. R. Co. certificate 2-1553, Coke County, originally sold to F. S. McCabe for 533 2-5 acres, now contains 1,191 acres, and you are authorized to accept payment in accordance with this increased acreage."

Appellee introduced in evidence a certificate of the Commissioner of the Land Office, that there appeared from the papers, documents and records of his office the following facts: That section 16 was classified as dry grazing land and valued at $2 an acre, under the school land Act of April, 1887, and was on the market for sale at that classification

and valuation until after the passage of the School Land Act of April, 1895, and that after that time, and prior to the amendment of said Act in 1897, the section was classified as dry grazing land at $1 an acre, and that such was its classification and valuation until the same was awarded to the appellee McCabe on his application filed in the General Land Office February 11, 1901. It was further certified by the Commissioner that it appears from the files and records of his office that all of section 16, the land in controversy, containing 1,191 acres, as per the corrected field notes of May 2, 1903, was sold and awarded to the appellee McCabe, and that his purchase is in good standing in the Land Office.

Appellee introduced a letter of date January 3, 1903, from the Commissioner of the Land Office, to the following effect: That the Commissioner had examined into the purchase of section 16 by appellee, and he informs the appellee that the sale should have originally been for 1,191 acres, instead of 533 2-5 acres, which the letter states was awarded to appellee, and concludes with this statement: "You will please write to the State Treasurer and ask him what amount is necessary for you to pay in order to place the 1,191 acres in good standing, if it is not so now under articles 4274 and 4275, Revised Statutes of 1895. The purchaser of this section was entitled to purchase the entire tract, which it seems you applied for originally, but of course not knowing how much was in the entire tract, you only gave your obligation for the original survey, but later sent your obligation including its excess."

The appellee next offered in evidence the following certificate of the Commissioner of the Land Office:

"I, John J. Terrell, Commissioner of the General Land Office of the State of Texas, do hereby certify that the papers, documents and records of said office show the following facts:

"1st. That F. S. McCabe did on February 11, 1901, file in said office an application for the purchase of all of section 16, block W, T. & P. Ry. Co., certificate 2-1553, in Coke County, and describing same as containing 533 2-5 acres and classed as dry grazing and offering $1 per acre therefor.

"2d. That on March 1, 1901, the said F. S. McCabe was notified by said office that the said survey contained 1,191 acres and that he must make an obligation for $1,161.23 and remit to the State Treasurer $16.09 more money as balance of first payment if he wanted the entire survey.

"3d. That on March 1, 1901, the acreage of the said section 16 was changed on the classification and appraisement sale record of school lands from 533 2-5 acres to 1,191 acres, as per the approved corrected field notes on file in said office.

"4th. That on March 11, 1901, the said McCabe filed in said office a new obligation for the entire 1,191 acres and informed the said office by letter dated March 6, 1901, and received in said office March 11, 1901, that he wanted the entire survey and had remitted to the State Treasurer the balance of $16.09 on first payment for same.

"5th. That on March the 12th, 1901, the State Treasurer was advised of the acceptance of the said application for the said section 16; but in that advice the acreage was given as 533 2-5 acres.

"6th. That on March 20, 1901, the State Treasurer filed in this office his receipt for first payment in accordance with the notice to him of March 12, and that the award of said section to the said McCabe was formally issued March 23, 1901.

"7th. That the award or sale of the said section 16 to the said F. S. McCabe was hereafter entered in the book of that entry or index, as being all of the section and containing 1,191 acres, and the wrapper containing the application, receipts and other papers pertaining to said award or sale was endorsed as being made for 1,191 acres.

"8th. That on January 29, 1903, this award or sale of section 16 was investigated and the State Treasurer was advised, on January 30, 1903, that the survey contained 1,191 acres instead of 533 2-5 acres, and that he was authorized to accept payment accordingly.

"9th. That on January 30, 1903, the said F. S. McCabe was advised as to the increase or excess in the survey and to confer with the State Treasurer as to the amount necessary to cover the excess.

"10th. That on March 30, 1903, the State Treasurer filed in this office his receipt for $16.45 as payment on the principal and $5.65 as balance of interest on the said purchase of section 16 by the said F. S. McCabe.

"11th. That the said award or sale of said section 16 to the said F. S. McCabe is now in good standing in his name on the records of said office for 1,191 acres."

Appellee introduced in evidence the certified copy from the Land Office of the classification and appraisement of the land in controversy under the Act of 1895, which showed that the survey in controversy was placed on the market as containing 533 2-5 acres, dry grazing land, valued at $1 per acre; and in this connection offered in evidence the classification and appraisement on file in the county clerk's office of Coke County, showing that all of survey 16 was originally classified and placed on the market as containing 533 2-5 acres.

There are some other facts in the record, but they merely tend to show that the Commissioner of the Land Office, and the State Treasurer recognized the title of appellee to the full 1,191 acres, and that he had made his obligation and made payment, as required, for that amount, after being notified that the survey contained the excess, as shown by the evidence. And it appears from the facts that the original intention of the appellee was to purchase all of the entire section No. 16, and his obligation states that it is for all of section 16. As soon as he was informed of the excess in the survey, he took the steps required, under the instruction of the Commissioner of the Land Office to purchase the same; and we conclude, as matter of fact that prior to May, 1901, when the appellant claims that he had made the application which was rejected, the appellee had acquired a superior right to the land.

Appellant's first assignment of error is to the effect that the court erred in not permitting him to introduce in evidence an application to purchase the land in controversy, of date May 3, 1901. It is unnecessary to set out the terms of this application; but, conceding that there was an excess, and admitting the theory of appellant to be correct that the excess had not been previously purchased by appellee, we think the ruling of the court in excluding the application is justified by the

case of Willoughby v. Long, 96 Texas, 194. But, however, in view of our findings of fact, the admission in evidence of this application would not have aided the plaintiff's case, because, under the facts as stated in the record, we have reached the conclusion that the appellee acquired a superior right over appellant to all of the entire section, prior to the date of this application.

We overrule appellant's second assignment of error. We are inclined to the opinion that that part of the certificate that is objected to was properly admitted in evidence. The word "remarks" was intended by the Commissioner to explain some words contained in the certificate, which would possibly have been meaningless, unless the explanation was given. We can not say to what extent the trial court considered the explanation made by the Commissioner under the head of "remarks;" but it was clearly admissible for the purpose of indicating that the Commissioner, in framing his certificate, did not intend to certify that the land in controversy was on the market. The word "remarks" referred to McCabe, which indicated, in view of the statement, that McCabe was the purchaser of the survey in controversy. And if this was true, it could be considered by the court for what it was worth, as indicating that it was not the purpose of the Commissioner to certify that the land in controversy was on the market for sale.

The third assignment of error is overruled. Objection is there urged to the admission of the entire certificate of the Commissioner of the Land Office. That certificate embraces a number of facts which, it is claimed, appear from the records and files of the Land Office. While it is more than likely, if we were called upon to so decide, we would hold that some of the facts certified were not matters that could be properly embraced in the certificate, yet it is clear that a part of the facts stated could have been taken from and appeared of record in the Land Office. The Commissioner is empowered by law to give a certificate of any fact that appears of record in his office. Now the objection is to the whole of this certificate. A part of it being admissible, the appellant is in no position to urge the objection in this court that it should be excluded. But if the entire certificate had been excluded, the ruling would not have benefited the appellant, because there is enough uncontradicted evidence in the record, independent of the certificate, to establish the appellee's superior right to the land.

We overrule the appellant's fourth and fifth assignments of error. The land was properly on the market for sale at $1 an acre, and was properly sold to the appellee. His original purpose and intention was to acquire title to the entire section, and as soon as the excess was discovered, he took steps promptly to purchase same prior to the time that appellant attempted to acquire any right. The land was awarded to the appellee, and the authorities who are required to sell and to receive the purchase price have recognized the existence of his superior right, which is in good standing in both the departments that have jurisdiction over that matter. The small amount which was not paid by appellee is too trifling to be noticed; but, however, his obligation is treated by the Treasurer as being for the full purchase price.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.