## J. N. ROSS v. J. J. TERRELL, COMMISSIONER.

### No. 1502.     Decided February 20, 1906.

**1.—School Land—Act of 1905—Purchase of Additional Land.**

Under section 6 of the Act of March 15, 1905, giving to any settler in Sutton and other enumerated counties who had not "purchased one complement of land under this Act or former law". the right to buy additional land not to exceed eight sections in all, a settler who had, prior to the passage of the law, purchased four sections, the full amount allowed by the then existing law, was entitled to buy additional land, not making his "complement" to exceed eight sections. (Pp. 505, 506.)

**2.—Same—Statute—Proviso.**

The construction to be given to section 6, of the Act of March 15, 1905, is not materially affected by the proviso to section 5, as to persons who have "purchased one complement of land as provided by this or former laws," which was introduced to guard against any construction of the Act which would permit the purchase of more than four sections by a settler in other than one of the excepted counties named in section 6. (P. 505.)

**3.—Statute Construed—Complement.**

The word complement, as used in section 6 of the Act of March 15, 1905, with reference to sales of school land to settlers in Sutton and other named counties, means the eight sections they were permitted to purchase by that Act. (P. 505.)

**4.—Statutory Construction—Reason of Law.**

The reasons governing the Legislature in making exceptional provisions as to the amount of school land which might be purchased by settlers in certain named counties considered as bearing on the construction of the particular terms of the law with reference to those who had already bought the full amount al-. lowed by previous laws. (P. 505.)

**5.—Statutory Construction—And for Or.**

The rule of statutory construction permitting "or" to be given the same meaning as "and," where necessary to preserve the clear intention of the Legislature, applied. (P. 506.)

Original proceeding in the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*Taylor & Cornell* and *N. A. Rector,* for relator.—We submit that it was the purpose and intent of the legislature to permit anyone in the eight excepted counties, who at the date of his application had not already purchased eight sections, to complete his complement of eight sections. It seems manifest to us that it was not intended that one who had bought four sections under the former law was forbidden to buy any additional sections to complete his complement, while his adjoining neighbor, who had bought only one, two or three sections under former law, might increase his purchase by buying seven, six or five sections, to complete his eight-section complement.

The rules for construing statutes have been so often declared that they need not be repeated here. The purpose of the courts is to discover the intent of the legislature, and when that has been done, the language used in the act must yield to the intent. Courts will change, substitute or disregard the letter for the spirit of the law. Russell v. Farquhar, 55 Texas, 359; Edwards v. Morton, 46 S. W. Rep., 793; 1 Am. & Eng. Enc. Law, 333, under word "and."

*R. V. Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant, for respondent.—The term "complement of land," found in this act, appears therein for the first time in the land legislation of Texas. It evidently means the amount of land which a given purchaser is now or which he has heretofore been authorized to purchase, under a particular statute. This term was doubtless designed to prevent repetition and the use of involved phraseology which would have been necessary had that term not been used.

Under said Act of 1905 a complement of land (when not complicated with questions as to purchase under former law) means eight sections in the counties named in section 6, including Sutton, while in all other counties it means four sections. As the phrase is used in said Act of 1905, a complement of land under the Act of 1901 was four sections. Now it is the contention of respondent that the four sections of school land so purchased by relator constituted one comple-

ment of land as provided by former law; and that, consequently, respondent was not authorized to accept said application for the purchase by relator of additional lands.

GAINES, Chief Justice.—This suit is brought in this court to compel the Commissioner of the General Land Office to accept relator as a purchaser of a half-section of school land in Sutton County, for which he had made application. It appears from the averments of the petition that, since the passage of the School Land Act of 1901, and before April 15, 1905, the time at which the late act upon the same subject went into effect, the relator had purchased from the state four sections of school land in Sutton County; that on the 4th day of May, 1903, he leased from the state the half-section in controversy for the term of five years, and that the lease is still in good standing. It further appears that that half-section lies within a radius of five miles from his home section, originally purchased; that some time after the Act of 1905 went into effect, he notified the Commissioner of his desire to purchase the half-section, and that thereupon the Commissioner caused the same to be inspected, classified and appraised at $1.25 per acre; and that the relator then applied to purchase the tract, complying in all respects with the requirements of the statute; but the allegations of the petition are not denied; but the respondent in his answer explains that his reason for rejecting the application was that after the land had been inspected and appraised, he discovered that the relator had already bought four sections of land under the law of 1901. The question then is, having purchased four sections under the previous law (the full amount then allowed), was relator entitled to purchase additional lands under the Act of 1905? That act authorized a sale of as many as eight sections in Sutton County, and certain other counties therein named.

The provision under which the relator claims his right to purchase is found in section 6 of the act in relation to the sale and lease of the public free school and asylum lands, approved March 15, 1905. So much of that section as bears upon the question involved in this controversy reads as follows: "In the counties of Bandera, Brewster, Crockett, El Paso, Jeff Davis, Loving, Pecos, Presidio, Sutton and Val Verde, one who has not purchased one complement of land under this act or former law prior to the filing of his application or applications may buy not to exceed eight sections of six hundred and forty acres each, more or less, or such part thereof as will complete his complement under this act, including the former purchase since April 19, 1901" (Laws 1905, p. 163). In this connection we also copy the following from section 5 of the act: "An original lessee, or the assignee of an entire lease out of which no sale of one complement of land has been made under this act, may purchase out of his lease at any time the quantity of land allowed to one purchaser under the provisions of this act. . . . One desiring to buy land as aforesaid shall first give written notice to the Commissioner specifying the land he wishes to buy, whereupon the Commissioner shall make or cause to be made an inspection of the land, and appraise same at its reasonable market

value, and advise the one desiring to buy, and also the proper county clerk, of the value placed thereon. After such valuation and notice given and filed in the proper county clerk's office, the land shall be subject to sale to the persons aforesaid only, and under the terms of this act; provided the applicant has not heretofore, or prior to the filing of his application or applications, purchased one complement of land as provided by this or former laws."

The provision quoted from section 5, as we think, throws but little light upon the question before us. That provision announces a general rule, applicable to the lands in all counties of the state except those mentioned in section 6. Under the general rule, as it existed before and after the passage of the act under consideration, a purchaser was limited to four sections. The purpose of section 5 was to define the rights of lessees and of their assignees. · So also the purpose of the limitation expressed by the phrase, "provided, that the applicant has not heretofore, or prior to the filing of his application or applications, purchased one complement of land as provided by this or former laws," was merely to hedge against any construction that would permit an applicant to acquire by purchase more than four sections of land, save in the excepted counties.

The relator's rights in this case depend upon the construction of the language quoted from section 6. That language is somewhat obscure; but we think the meaning of the words is expressed in this paraphrase: In the counties of Bandera, etc., one who has not purchased eight sections of land under this act, or under this act and the former laws, may buy that quantity, or so much thereof, as will complete his complement under this act, including any former purchase since April 19, 1901. We think the word "complement," as used in the latter part of the provision quoted, clearly means eight sections, and by a familiar rule of construction it should be construed in the same sense as used in the previous part, unless there be other expressions showing a different intent. It is true that the words, "has not purchased one complement under this act or former law," implies that a complement was meant that could have been purchased under a former law. But it seems to us that the reason which impelled the Legislature to make an exception as to the counties named, and, as to them, to depart from the rule then existing of limiting the amount of school lands to be bought by one purchaser to four sections, and to allow a purchase of eight sections in those counties, was that, on account of the inferior quality of the lands therein situate, and the climatic conditions of the territory, as many as eight sections might be necessary to the comfortable support of a family of settlers. If such be the reason of the law, we do not see why one should be denied the privilege of buying eight sections in all, merely because he had bought four sections under the previous laws. Besides, the construction insisted upon on behalf of the respondent leads to a manifest incongruity. It would preclude one who had bought four sections from purchasing any additional lands whatever; but would permit another purchaser, who had bought three and one-half sections under a former law, to buy four and one-half

additional sections, so as to make up his complement of eight sections allowed by the new statute.

Again, in the case of the United States v. Fisk, 3 Wall., 447, the court say: "In the construction of statutes, it is the duty of the court to ascertain the clear intention of the Legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" Applying this rule, to which numerous other cases may be cited, we think we should read the words "under this act or former law" as if they read, "under this act and former law." When so read, the provision in question becomes reasonable and consistent, and expresses what we think was the true intention of the Legislature in enacting it.

For these reasons, the mandamus as prayed for is awarded.

*Mandamus granted.*