GEORGE FORD v. J. T. ROBISON, COMMISSIONER OF GENERAL LAND OFFICE.

No. 2964.    Decided March 13, 1918.

**1.—Public Lands—Sale—Statutes Construed.**

By section 3 of the Act of April 5; 1915, Laws, 34th Leg., ch. 150, p. 256, the quantum of public land in the county of Jeff Davis permitted to be sold to one purchaser is measured by the number of sections of surveyed land, and not by the acreage of such surveys. The Land Commissioner was not authorized to award to one purchaser lands which would render his purchases in excess of eight sections, though the acreage thereof was less than 5120 acres, or eight sections of full 640 acres each. Hazelwood v. Rogan, 95 Texas, 295, followed.    (Pp. 127-131.)

**2.—Statutory Construction—Cases Discussed.**

Hazelwood v. Rogan, 95 Texas, 295, discussed and followed. Ross v. Terrell, 99 Texas, 502, discussed and limited.    (Pp. 129, 130.)

**3.—Public Lands—Sale—Statutes Construed.**

Article 5420, Rev. Stats., limiting the quantity of public land which might be sold to one applicant by the quantity previously purchased by him was not repealed by the Act of April 5, 1915, Laws, 34th Leg., ch. 150, p. 256. Though the latter Act contains no such restriction, by previous purchases of the applicant, of the quantity to be sold to him, it provides (sec. 1) for sale "under the terms, conditions, limitations and restrictions now provided by law," and thus adopts, and does not repeal, either directly or by implication, the restrictions on the amount to be purchased by one applicant contained in article 5420, Rev. Stats.    Pp. 131-133.)

**4.—Case Stated.**

An applicant to purchase a half section (320 acres) of public land in Jeff Davis County under the Act of April 5, 1915, was the highest bidder therefor, and was awarded the purchase by the Land Commissioner. He had previously purchased, since April 19, 1901, surveys of sections or parts of sections aggregating eight sections in all, as surveyed. But since one of these surveyed sections contained only 277½ acres, his entire purchases, if awarded the 320 acres applied for, aggregated less than 5120 acres, or eight full sections of 640 acres each. Held, that he was not entitled to the award; and that relator, the next best bidder for the 320 acres, was entitled to mandamus requiring the Land Commissioner to cancel the award made and award the land to relator as purchaser.    (Pp. 127-133.)

Original application by Ford to the Supreme Court for writ of mandamus against Robison, as Commissioner of the General Land Office, with whom W. T. Jones, an adverse claimant of the land, was made co-respondent.

J. R. and W. L. Hill, for relator, cited: Sherrod v. Terrell, 97 Texas, 165; Hazelwood v. Rogan, 95 Texas, 295, 67 S. W., 80; Kuechler v. Wright, 40 Texas, 600; Horton v. Brown, 2 Texas, 79, 98.

B. F. *Looney,* Attorney General, and *G. B. Smedley,* Assistant, for respondent Robison, cited: Ross v. Terrell, 99 Texas, 502.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Section 1330, certificate 3910, G., C. & S. F. Ry. Co., containing only 320 acres of public free school land, lying in Jeff Davis County, classified as mineral and grazing land and appraised at $1.50 per acre, came on the market on January 1, 1916, for sale by the State, and was awarded by the Commissioner of the General Land Office to the co-respondent, W. T. Jones, on his bid of $2.05 per acre, which was the highest bid for said land. The next highest bid therefor, $1.75 per acre, was that of relator, George Ford.

Prior to the filing of his application to purchase said land, and even prior to the Act approved April 5, 1915 (Gen. Laws 1915, chap. 150, p. 256), under which said award of this section 1330 was made, but after April 19, 1901, Jones had purchased from the State, and, on January 1, 1916, held, in good standing on the books of the General Land Office, various other tracts of public free school lands lying in Jeff Davis County, and described as follows:

| Part. | Section. | Block. | Certificate. | Grantee. | Acres. |
|---|---|---|---|---|---|
| All | 6 | 2 | 1–9 | G. H. & S. A. Ry. Co | 640 |
| E. ½ | 12 | 2 | 1–12 | G. H. & S. A. Ry. Co | 320 |
| W. ½ | 4 | 2 | 39–4584 | H. & T. C. Ry. Co | 320 |
| N. ½ and S. E. ¼ | 5 | 2 | 1–9 | G. H. & S. A. Ry. Co | 480 |
| All | 8 | 3 | 39–4586 | H. & T. C. Ry. Co | 640 |
| All | 10 | 3 | 39–4587 | H. & T. C. Ry. Co | 640 |
| E. ½ | 696 | | 800 | T. C. Ry. Co | 320 |
| All | 32 | WJG1 | 1563 | E. L. & R. R. Ry. Co | 640 |
| All | 842 | | 1087 | T. C. Ry. Co | 277½ |
| E. ½ and N. W. ¼ | 34 | WJG1 | 1564 | E. L. & R. R. Ry. Co | 480 |

It appears that sections 6, 8, 10, and 32 are original surveys or sections, and each contains 640 acres; that the west half of section 4 and the east half of section 12 aggregate 640 acres; that the east half of section 696 and the north half and southeast quarter of section 5 and the east half and northwest quarter of section 34 aggregate 1280 acres; that section 842 contains only 277½ acres; and that, altogether, such previous purchases by Jones, comprising either all or portions of ten different sections or surveys, aggregate only 4757½ acres, or less than eight sections of 640 acres each, but that section 842 is *an entire original section* or survey. In other words, such previous purchases by Jones embraced four entire surveys of 640 acres each, three half surveys of 320 acres each, and two three-quarter surveys of 480 acres each (altogether comprising an acreage just equal to seven sections of 640 acres each), and also one other entire survey, containing only 277½ acres; but the aggregate acreage of all of said former purchases and this section 1330 amounts to less than 5120 acres—the aggregate acreage of eight ordinary sections of 640 acres each.

Relator contends that on and after January 1, 1916, by reason of·
said prior purchases, which he claims constituted a full "complement,"
Jones had become and was disqualified to purchase said section 1330,
wherefore, relator says, said award of that section to Jones was con-
trary to law, and void; and thereupon relator prays this court to require
the Commissioner to cancel said award, and to. award said section 1330
to relator.

The single question, therefore, is: Was Jones a lawful purchaser of
that section—320 acres—the land in controversy? If so, the award to
him should stand; otherwise, the writ of mandamus should go.

The sole general issue is one of law as to what *quantum* of public
school lands lying in Jeff Davis County might lawfully be purchased
on January 1, 1916, by one circumstanced as was Jones. That issue
involves these two vital questions:

First. Whether such *quantum* is measured by the *number of sections,*
with a maximum, for that county, of 8, or by the acreage, with a maxi-
mum, for that county, of 5120?

Second. Whether, in determining such *quantum,* Jones' said pur-
chases should be counted against him? Upon each branch of the issue
relator insists upon the former and respondents upon the latter theory
of statutory construction.

Among the provisions of said Act of April 5, 1915, are these:

"Section 1. On the first day of September, 1915, and on the first
day of each January, May, and September of each year thereafter, the
surveyed lands and portions of surveyed and unsurveyed land shall be
sold under the terms, conditions, limitations and regulations as is now
provided by law, except as changed herein.

"Sec. 2. Land that is situated in the counties of . . . may be
sold in quantities not to exceed two sections of 640 acres each, more or
less, to one person, and in 80-acre tracts, or multiples thereof, and on
condition of actual settlement of some portion of the land so purchased
and continuous residence thereupon for three consecutive years, as now
provided by law.

"Sec. 3. Land that is situated in the counties of . . . Jeff
Davis . . . may be sold in quantities *not to exceed eight sections
of 640 acres each, more or less,* to one person, and *in whole tracts only,*
and without condition of settlement and residence." (Italics ours.)

The expression used by the Legislature in defining that *quantum,* as
applicable to Jeff Davis County,—"not to exceed eight sections of 640
acres each, more or less, to one person, and *in whole tracts only*"—
indicates, clearly and unmistakably, a definite purpose to give control-
ling force and effect to the number of *sections,* rather than to the *acre-
age,* and plainly negatives the idea that the acreage shall control. The
number of sections comes first, as of greater importance, and the words
"of 640 acres each" are used to carry recognition of the amount of the
acreage ordinarily thrown into one section, under both State and Fed-
eral practices, and the words "more or less" are added, in the nature of

a videlicet, to prevent a rigorous construction which would require the survey, or section, to contain precisely 640 acres—no more and no less; and any other construction of the statute is precluded by the addition of the words "and in whole tracts only." The positive inhibition against making any sale except "in whole tracts" unquestionably prevents the Commissioner from carving out of an entire section containing more than 640 acres an acreage which, when added to seven other sections aggregating more than 4480 acres, would make up $8 \times 640 = 5120$ acres.

Moreover, if *acreage* is to control, what reason was there for saying anything about *sections?* We .can see none. Historically, also, the word "section" as used in said section 3 of said Act of 1915, has the meaning which we here attribute to it. That is made manifest by reference to previous decisions of this court and of other courts of this State construing laws providing for sale or for lease 'of public lands. Hazelwood v. Rogan, Commissioner, 95 Texas, 295, 67 S. W., 80; Winans v. McCabe, 41 Texas Civ. App., 99, 92 S. W., 817.

In the Hazelwood case this court construed the following portion of Revised Statutes, article 4218f, as amended by Acts of 1897, General Laws, 1897, page 184:

"When any portion of said land has been classified to the satisfaction of the Commissioner of the General Land Office, under the provisions of this chapter or former laws, such land shall be subject to sale, but to actual settlers only,. except where otherwise provided by law, and in quantities of not less than eighty acres or multiples thereof, *nor more than four sections containing six hundred and forty acres, more or less.*" The court, through Chief Justice Gaines, said:

"The question is, did the Legislature mean by four sections four original surveys, or did they mean lands amounting in quantity to four sections of 640 acres each,—or to 2560 acres? In the primary and broad signification of the term, any division of a thing is a section. But probably by reason of the fact that the United States has surveyed its lands in sections of a square mile each, it has become customary to speak of such a survey as a section. But any survey may be appropriately designated as a section. When in the provision last quoted the Legislature uses the words 'four sections consisting of six hundred and forty acres, more or less,' they meant surveys, that is, to include surveys intended and purporting to contain the quantity named,—though they might contain more,—and surveys of less than that quantity. In other words, the amount of land the settler was entitled to purchase was to be determined by the number of surveys and not by the quantity in acres. . . . It might well have been deemed the more practicable and convenient rule to grant the right to purchase three original surveys rather than the quantity of 1920 acres, when such surveys contained less than that quantity. . . . The survey for which the relator applied and which contained only 457 acres and a fraction

Vol. 109-9.

was known in the Land Office as 'section 65' and was so described in his application."

Counsel for the Commissioner frankly concede that their contention on this point, in the case at bar, "appears to be in conflict" with that decision, but suggest that the two cases may be distinguished in that, they say, the statute there actually before the court for construction was a portion, of the Act of 1901, page 292 et seq., which expressly limited to just "four sections" rather than to four sections "of 640 acres each, *more or less,*" the quantity of land which might be sold to one applicant. Whatever force lies in the suggested distinction seems to us to operate in the opposite direction, strengthening the idea that the conclusion there announced should be applied to the facts of this case.

The same counsel say, also: "We think it clear, however, that the portion of article 4218f discussed by the court in the Hazelwood-Rogan case and above quoted, had been superseded by that portion of the Act of 1901 above referred to fixing the quantity at 'four sections of land.'" The court seems to have entertained the opposite view, saying: "The right to purchase additional lands is expressly conferred by article 4218f of the Revised Statutes as amended by the Act of 1897 (Laws 1897, page 184), and that article as to its main provisions, is not affected by the Act of 1901."

In any event the reasoning of this court in that case is, we think, conclusive upon the question as it arises in the case at bar. If "section" as used in section 3 of said Act of 1901, when not coupled with any reference to the amount of the contained acreage, is applicable to a tract of less than 640 acres, as was held in the Hazelwood case, surely "section" as used in section 3 of said Act of 1915, when immediately followed, as it is, by the words *of 640 acres each, more or less,* to one person, and *in whole tracts only,*" is fairly applicable to this section 842, although it contains less than 640 acres.

In this connection Ross v. Terrell, 99 Texas, 502, 90 S. W., 1093, has been cited in behalf of the Commissioner as applying a liberal rule of construction; but it is not claimed that the present issue was in that case. There, in construing sections 5 and 6 of the Act of April 15, 1905, giving to any settler, in certain counties, who had not "purchased one complement of land under this or former law" a right to purchase "not to exceed eight sections of six hundred and forty acres each, more or less, or such part thereof as will complete his complement under this Act, including the former purchase since April 19, 1901" (Laws 1905, page 163), this court said: "We do not see why one should be denied the privilege of buying eight sections in all merely because he had bought four sections under the previous laws." Accordingly the court there held that the expression "under this act or former law" should be read "under this Act *and* former law." But the issue there was as to how many sections, rather than as to how many acres, one applicant might purchase.

A supporting reason there assigned was, indeed, that the approved

construction would prevent inequalities as between purchasers, in the administration of the law; but the slight change in one word of the statute which the court there thought would develop, more clearly the legislative intent is not analogous to the extensive changes necessary to conform the provisions of said Act of 1915, *supra,* to the meaning which counsel for the Commissioner ask us to place upon it. We find no ambiguity in said portion of section 3, hence the public policy involved is not one of judicial control or concern.

We hold that in section 3 of said Act of 1915, *supra,* the maximum of land which one may purchase thereunder is defined in "sections," not in *acres.*

Upon the second question:

Revised Statutes, article 5420, which was in force on January 1, 1916, provides:

"The Commissioner of the General Land Office is hereby prohibited from selling to the same party more than one complement of four or eight sections of land, according to the county; and all applications to purchase land shall also disclose the prior lands purchased by the applicant from the State, if any, and the residence of the applicant at said time; and, if it appear therefrom, or from the records in the Land Office, that said applicant has already purchased land aggregating four or eight sections, according to county, since April 19, 1901, his application shall be rejected; provided, this shall not apply to sales made to a purchaser and afterwards cancelled as invalid for some reason other than abandonment, and where the purchaser himself was not at fault." Gen. Laws, 1901, chap. 125, p. 294, sec. 3.

It seems true that the Act of 1897, chapter 129, page 184, in authorizing sales of State lands, made no restriction based on former purchases by an applicant. It seems true, also, that various subsequent Acts, preceding, however, said Act of 1915, expressly required that, in determining whether an applicant was qualified to purchase the lands described in his application, prior purchases by him should be charged against him (Acts 1901, chap. 125, p. 294, sec. 3; Acts 1905, chap. 103, p. 163, sec. 6; Acts 1907, 1 S. S., chap. 20, p. 490, sec. 6), and that said Act of 1915 did not do so; but that circumstance does not conclusively indicate a legislative purpose or revert to the practice under said Act of 1897 and to relieve or exempt the operation of said Act of 1915 (under which the award here in question was made), from such requirement of Revised Statutes, article 5420, *supra,* which was not expressly repealed.

Obviously the purposes of said article 5420 are (a) to prohibit State sales of more than "a complement" of lands to one person, and (b) to charge the applicant with all lands so purchased by him since April 19, 1901, with certain exceptions which are not claimed to exist in the present case.

Now section 1 of said Act of 1915, which was in force when the land here in controversy came on the market, and when both applications

to purchase same were filed, expressly declares that "the surveyed lands . . . shall be sold under the terms, conditions, *limitations and regulations* as is *now provided by law,* except as changed herein." Consequently said article 5420 having never been repealed, the stated restrictive requirements thereof should be read into, and should be construed and applied in connection with, the above quoted provisions of said Act of 1915, unless the latter are so inconsistent with the former as to repeal them by necessary implication. In support of that settled rule of construction no authorities need be cited.

We find no such inconsistency. The material changes from pre-existing law which were made by said Act of 1905 were these: (a) different sale days were designated; (b) conditions of settlement and residence on the land were removed; (c) the amount of first payment was increased; (d) the rate of interest was increased. By the terms of Revised Statutes, article 5418 (Acts 1907, 1 S. S., p. 490, sec. 6), which, also, was left in force, as well as by the terms of said Act of 1915, section 3, Jeff Davis County, in which section 1330 lies, is *an eight section county*—the "complement" in that county being "eight sections."

Inasmuch, therefore, as none of the changes made in said Act of 1915 conflicts with the quoted requirements of article 5420, those requirements, also, must be applied to the facts of the present case, with the result that, inasmuch as all of Jones' former purchases, aggregating eight sections, were made prior to April 19, 1901, they must be charged against him, and since they and section 1330, which must be counted as a section containing *"640 acres . . . or less,"* together overrun the statutory "complement" of "eight sections," Jones could not, on January 1, 1916, or afterward, legally purchase said section 1330, and said attempted sale thereof to him must be cancelled. This conclusion, besides finding strong support in reason, is in line with precedent. Houston v. Koonce, 106 Texas, 50, 156 S. W., 202.

A statute, later than said article 5420, declared that "any person desiring to purchase *any portion* of the unsurveyed school fund" may designate "the land he desires," and that such land shall be surveyed by the county surveyor, etc., and that, "if upon inspection of the papers the Commissioner is satisfied . . . that the land is vacant and belongs to the school fund, and the survey has been made according to law, he shall approve same and notify the applicant that the land is subject to sale to him, stating the classification price and terms, which shall be the same as that for surveyed lands, except as herein provided." Gen. Laws, 1905, chap. 103, p. 164, sec. 8. The language conferring that right to purchase is very broad, placing no express limitation upon the amount of land to be purchased.

That Act did not expressly carry forward the provisions of article 5420, *supra,* or refer in terms to the Act of 1901, from which it was taken, but did declare that "all laws and parts of laws in conflict with

the provisions of this Act are hereby repealed"; nevertheless, this court, through Chief Justice Brown, in the cited case, declared:

"The two laws are entirely consistent so far as they apply to the same subject, and no repeal of the previous law was effected by the law of 1905. . . . Under neither law could a purchaser acquire more than four sections."

The effect of that decision was to read into section 8 of said Act of 1905 the restrictions set out in said article 5420, which forbade the Commissioner to sell to the same party "more than one complement of four or eight sections of land, according to the county."

The writ of mandamus should be granted in all respects as prayed for, and it is so ordered.