Ex Parte Ben F. Meckel.

No. 5081.   Decided May 21, 1919.

Rehearing granted March 17, 1920.

1.—Disloyalty Act—Constitutional Law—Words and Phrases.

In considering the language of Section I, Chap. 8, Act of the Fourth Called Session of the Thirty-fifth Legislature, commonly called the Disloyalty Act, the last word "or," in said section, should be read "and," and the word "if," in the fourth line from the end of said section should be read "when," or "in case that."

2.—Same—Statutes Construed—Words and Phrases.

The words "forbidden language" in said Act comprehends all language used in the presence and hearing of another person in time of war, which language is disloyal to the United States, etc., or abusive in character and calculated to bring into disrepute the United States, etc., and contains all the elements of the offense prohibited by such section.

3.—Same—Former Opinion—Statute Construed—War Measure—Congress.

The original opinion in the instant case upholds the Disloyalty Statute only upon the hypothesis that it requires that the forbidden language be used in the presence and hearing of a citizen of the United States and is reasonably calculated to provoke a breach of the peace, etc., and that the prohibition of the use of disloyal language *per se* as a war measure, is admittedly the subject of federal legislation and is not within the purview of the regulatory power of the States.

4.—Same—Police Power—Constitutional Law—Liberty of Speech.

The State would not have the power to interdict the use of the forbidden language except in the exercise of the police power, but in the exercise of that power it could forbid the uttering of the disloyal language in the presence of any person, whether a citizen of the United States or not, provided only, that it was done in the State of Texas under circumstances reasonably calculated to provoke a breach of the peace; but on rehearing the court is convinced that, giving the language used in the statute its true meaning, it could not be held to denounce a breach of the peace, but that its purport is to denounce as a felony the use of the disloyal language described, which is contrary to the Bill of Rights guaranteeing every person liberty of speech.

5.—Same—Rehearing—Original Opinion—Bill of Rights.

The reasoning of the original opinion is correct, and would have been different if the language of said section had been construed or analyzed, and we now hold that said Section is violative of Section 8 of the Bill of Rights of the Constitution of the State of Texas, and therefore unconstitutional, and the relator is discharged.

From Crockett County.

Original Habeas Corpus proceedings, asking release from arrest under an indictment for the violation of the so-called Disloyalty Act,

Acts Thirty-fifth Legislature, Fourth Called Session, Chapter 8, Page 13.

The opinion states the case.

*Wright & Harris* and *C. E. Davidson,* for Relator.—Prigg v. Commonwealth of Pennsylvania, Book 10, Co. Op. U. S. Sup. Ct., Rep. page 90; Houston v. Moore, 5 Wheat. Rep., 1, 21, 22; Moses Taylor v. Wilson Hammons, 4 Wall., 411; Ex Parte Bridges, 2 Woods (U. S.) 428; Ex Parte Houghton, 8 Fed. Rep., 879; Sturgis v. Crowinshield, 4 Wheat., 139; Martin v. Hunter, 1. Wheat., 304; Com. v. Fuller, 8 Metc., 313; Com. v. Tenney, 97 Mass., 50; People v. Kelly, 38 Cal., 143; 3 Story, Const., Law, 623; State v. Redmond, 134 Wisconsin, 89.

*B. F. Looney,* Attorney General; *E. B. Hendricks,* Assistant Attorney General; *C. M. Cureton, C. W. Taylor,* Assistant Attorneys General, for the State.—On question of constitutionality of Act:—Witherspoon v. Jernigan, 97 Texas, 98; Ross v. Terrell, 99 Texas, 502; Cooley's Const. Lim., pp. 704, 706; Halters v. Nebraska, 205 U. S., 40; State v. Holm, 166 N. W., 181; Weil v. Black, 86 S. W., 666; Martin v. State, 18 Texas Crim. App., 224; Stroube v. State, 40 Texas Crim. Rep., 583; Sligh v. Kirkwood, 61 So., 185; U. S. v. Wells, Fed. Cas., No. 16665; Kemp v. Kennedy, Fed. Cas., No. 7886; People v. Welch, 24 L. R. A., 117; Crossley v. U. S., 168 U. S., 640; People v. Burke, 126 N .W., 446; Anno. U. S. Stats., (1916), Sec. 10500, (U. S. Crim. Code, Sec. 326).

MORROW, Judge.—Relator is under indictment for violation of the so-called disloyalty Act, Section 1 of which reads as follows:

"If any person shall, at any time or place within this State during the time the United States of America is at war with any other nation, use any language in the presence and hearing of another person, of and concerning the United States of America, the entry, or the continuance, of the United States of America in the war, or of and concerning the army, navy, or marine corps of the United States of America, or of and concerning any flag, standard, color, or ensign of the United States of America, or any imitation thereof, or the uniform of any officer of the army of the United States of America, which language is disloyal to the United States of America, or abusive in character, and calculated to bring into disrepute the United States of America, the entry or continuance, of the United States of America in the war, the army, navy, marine corps of the United States of America, or any flag, standard, color, or ensign of the United States of America, or any imitation thereof, or the flag, color, standard, or ensign, or the uniform of any officer of the army of the United States of America, or is of such nature as to be reasonably calculated to provoke a breach of the peace, if said in the presence and hearing of a citizen of the United States of America, shall be deemed guilty of a felony, and shall be punished by confinement in the State penitentiary

for any period of time not less than two years, nor more than twenty-five years." Acts 35th Legislature, 4th Called Session, Chap. 8, p. 13.

Relator applies for a writ of *habeas corpus* and insists that the Act is such an abridgment of free speech as only Congress under its war power might pass, and that even if in any case the subject be one upon which the State might legislate that its authority was ousted when Congress enacted the Espionage law.

The phase of the statute which denounces as a felony the use of the language described in the Act, in the presence of a citizen of the United States, in a manner reasonably calculated to provoke a breach of the peace, conflicts with no federal law nor constitutional guarantee, but observes recognized limitations on the right of free speech. Examples of these limitations are found in ordinances and statutes forbidding addresses in certain public places, the distribution of objectionable printed matter and its transmission through the mails. Smith v. State, 39 Texas Crim. Rep., 320; Ex parte Warfield, 40 Texas Crim. Rep., 414; Cooley's Const. Limitations, p. 518; Davis v. Mass., 167 U. S. Rep., 43; In Re Anderson, 5 Ann. Cases, 421; Ex Parte Jackson, 96 U. S., 727. Nor is it obnoxious to the law requiring certainty in defining criminal acts, as instanced in the existing statute defining the offense of breach of the peace, disturbing religious worship, and others in which the character of the language and the place and manner in which it is spoken, and not the intent with which it is used, makes it criminal. The prevention by law of the disturbance of the public order by acts of violence or acts likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet, is a well-known and generally recognized attribute of State government. It is the preservation of a natural right belonging to all members of a political society. Words & Phrases, 2nd. Ed., vol. 1, p. 292; Cyc., vol. 5, p. 1024. In preserving it the police power, which belongs exclusively to the State is exerted. It is not dependent upon the war power, which is exclusive in the federal government, though the fact that war exists and produces unusual conditions does not militate against the power of the State to pass laws to meet these conditions. It has been said that "the police power is, from its nature, incapable of exact definition or limitation because none can foresee every changing condition that may call for its exercise." Ruling Case Law, vol. 6, p. 184. Speaking of the Espionage Act, it is said by the Supreme Court of the United States: "We admit that in many places and in ordinary times the defendants in saying all that was said in the circular would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. The most stringent protection of free speech would not protect a man in falsely shouting 'fire' in a theatre and causing a panic. The question in every case is whether the words used are used in such circumstances and are of such nature as to present a clear and present danger that they will bring about the

substantive evils that Congress has a right to prevent.'' Schenck v. U. S., 249 U. S., 47; 63 Law Ed., 470.

In time of war when the public mind, by reason of the conflict, is easily excited, when men may be aroused to violence by language and conduct which in times of peace would receive but passing attention, the State, having the right to prevent the violence, has the power to pass a law appropriate to arrest the cause of disturbance.

If construed as creating a substantive offense distinct from that of disturbing the peace, there is serious question as to whether it is in conflict with the Bill of Rights, which declares that ''every person shall be at liberty to speak, write or publish his opinion on any subject, being responsible for the abuse of that privilege, and no law shall ever be passed curtailing the liberty of speech.''

This implies that under the law of this State, every person may speak the truth, with good motives with reference to the officers, agencies and policies of the government. Ruling Case Law, vol. 6, p. 255.

Doubtless the Federal Congress, under the war power, may curtail the right of free speech during war, yet it , in the Espionage Act, makes the crime depend on the falsity cf the statement and the evil intent of its maker, while the Act in question does not. It is not necessary that it should do so in preventing a breach of the peace, and to that extent we regard it valid.

In his brief filed in this case, the Attorney General says:

''A consideration of this section of the law discloses that its primary and fundamental purpose is to prevent breaches of the peace by making it an offense during war time to use such language as is there described and of such a nature as to be reasonably calculated to provoke a breach of the peace. It is true that in this section, without enumerating various kinds and character of disloyal language, the printed act reads, 'or is of such a nature as to be reasonably calculated to provoke a breach of the peace if said in the presence and hearing of a citizen of the United States.' It is entirely clear, we think, that the word 'or' has been unthoughtedly or unintentionally used for the word 'and' and that in reality the word 'and' is meant and, under well known rules of construction, should be substituted for, the word 'or.' Witherspoon v. Jernigan, 97 Texas, p. 98; Ross v. Terrell, 99 Texas, 502. (This rule is often applied to criminal statutes when it will not result in making them more severe. Williams v. State, 137 S. W. Rep., 927, Ann. Cases, 1913A, p. 1056; Kirk v. State, 150 S. W. Rep., 83, Ann. Cases 1913D, p. 1239; State v. Hooker, 22 Okla., 712; State v. Long, 141 S. W. Rep., 1099; Lewis, Sutherland, on Statutory Construction, sec. 368; Endlich on Interpretation of Statutes, sec. 303.) In other words, in order to charge this offense, the pleader must not only charge that the defendant was guilty of using disloyal language such as is previously enumerated in the section, but must charge that the language, in addition, is of such a

nature as to be reasonably calculated to provoke a breach of the peace. In section 2 of the act this is quite clear, because the word 'and' is used in a similar capacity instead of the word 'or.' By reference to the caption of the act it will also be seen that the construction we suggest is a correct one, because the caption, after giving the substance of Section 1, relating to disloyal language, states directly that such language must be 'of such a nature as to be reasonably calculated to provoke a breach of the peace.' Section 8, which is the emergency clause, is in harmony with the construction and interpretation we here suggest, for it declares that the cause of the emergency is 'that there are many breaches of the peace and other disturbances of public order and safety arising, due to the evils sought to be remedied by this act.'

"The construction here suggested is the one which has been adopted by the pleader in drawing the indictment upon which the relator is held in custody. The elements, then, of an offense under the State act, are that the language used must not only be disloyal, but must be reasonably calculated to provoke a breach of the peace, if 'said in the presence and hearing of a citizen of the United States. Clearly, then the purpose of this section of the act is to prevent breaches of the peace, and it appears to be drawn in much the same manner as Article 1020 of the Penal Code of the State."

We adopt this construction and order the application for habeas corpus dismissed.

*Dismissed.*

### ON REHEARING.

### March 17, 1920.

LATTIMORE, Judge.—Our Assistant Attorney General contends that in considering the language of Section 1, Chapter 8, Acts of the Fourth Called Session of the Thirty-fifth Legislature, commonly called the "Disloyalty Act," the last word, "or," in said section, should be read "and," and that the word "if," in the fourth line from the end of said section, should be read "when," or "in case that." We see no objection to such construction, and agree thereto.

Said section is set out at length in the original opinion; and will not be here reproduced.

For the sake of brevity, we will use the expression, "forbidden language," in this opinion on rehearing, as comprehending all language used in the presence and hearing of another person in time of war,

which language is disloyal to the United States, etc., or abusive in character, and calculated to bring into disrepute the United States, etc., and is of such nature as is reasonably calculated to provoke a breach of the peace in case that it be used in the presence and hearing of a citizen of the United States. In other words, we will use the expression, "forbidden language," as containing all the elements of the offense prohibited by said section.

Examining our former opinion, we observe the following statement:

"The phase of the statute which denounces as a felony the use of the language described in the Act in the presence of a citizen of the United States, in a manner reasonably calculated to provoke a breach of the peace, conflicts with no federal law nor constitutional guarantee, but observes recognized limitations on the right of free speech."

It will thus be seen that it was assumed in said opinion that the language denounced by the Act in question, must be of such kind as is reasonably calculated to provoke a breach of the peace and also language uttered in the presence and hearing of a citizen of the United States; and it was with that in mind that the opinion was written. In this motion for rehearing, however, relator stresses the fact that one of his main contentions was that the language of said section is such that its necessary purpose is the punishment of the use of disloyal language, when uttered in time of war, and not the prevention of breaches of peace, and that the scope of said section is such as to punish the user of forbidden language, when uttered in the presence of another person, irrespective of whether said other person be a citizen of our country, or otherwise.

Keeping this contention before us, we have carefullly reviewed the entire matter.

The original opinion justifies and upholds the statute involved, only upon the hypothesis that it requires that the forbidden language be used in the presence and hearing of a citizen of the United States, in which case, such language being reasonably calculated to provoke a breach of the peace, the State's exercise of its police power in preventing breaches of the peace, fairly embraces the passage of a statute of this kind. It seems to be conceded in the opinion, that if the provisions of said section 1, of the Disloyalty Act, are such as that a prosecution will lie when the forbidden language is used in the presence and hearing of some person other than a citizen of the United States, the necessary object of the statute would then seem to be, not to prevent breaches of the peace, but to prevent the use of disloyal language in time of war, and that in such case the statute could not be upheld. The prohibition of the use of disloyal language per se as a war measure, is admittedly the subject of federal legislation, and not within the purview of the regulatory power of the States.

If the prohibitions of the statute in question can be violated by the use of the forbidden language at any other time or place than in

the presence and hearing of a citizen of the United States, such statute would be violative of the provisions of Section 8, of our Bill of Rights, which guarantees liberty of speech, and of the press, and the right to show the truth of any alleged statement or publication, as justification.

The State would not have the power to interdict the use of the forbidden language except in the exercise of the police power, but in the exercise of that power it could forbid the uttering of the disloyal language in the presence of any person, whether a citizen of the United States or not, provided only, that it was done in that State of Texas under circumstances reasonably calculated to provoke a breach of the peace. On the present hearing, we are convinced that giving the language used in the statute its true meaning it could not be held to denounce a breach of the peace, but that its purport is to denounce as a felony the use of the disloyal language described. It cannot make the use of the language per se a felony, for the reason stated in the original opinion that every person may speak the truth with good motives with reference to the officers, agencies, and policies of the government. The State may circumscribe the circumstances under which these utterances may be made, but it cannot prohibit them without offending against the provision of the Bill of Rights declaring:

"Every person shall be at liberty to speak, write, or publish his opinion on any subject, being responsible for the abuse of that privilege, and no law shall ever be passed curtailing the liberty of speech."

Let us scrutinize said section, using so much of same as is necessary to make plain the point involved, and we see that it requires that the accused use the forbidden language in time of war, as stated in the opening clause of said section, "in the presence and hearing of another person;"—that said language must be disloyal to the United States, or abusive in character, and calculated to bring the United States into disrepute; and that said language be of such nature as to be reasonably calculated to provoke a breach of the peace (in case that) same be said in the presence and hearing of a citizen of the United States, in which case such person shall be guilty of a felony, etc.

Again, if we may be permitted to transpose the phrases of the above, it would appear as follows: "If any person in time of war, in the presence and hearing of another person . . . use any language . . . which language . . . is of such nature as that in case it is said in the presence and hearing of a citizen of the United States, it is reasonably calculated to provoke a breach of the peace, such person shall be guilty of a felony," etc. It seems too clear for discussion further, that the gravamen of the offense thus created, is the use of language of *such nature* as that in case it is uttered in the presence of a citizen of our country it would likely cause a breach of the peace, and that the terms of said section are so framed as to

penalize one who utters language of *such nature*, whether or not same be used under circumstances, or in such presence, as to make same reasonably provocative of a breach of the peace.

We believe that the reasoning of the original opinion is correct, and that its holding would have been different if the language of said section had been construed or analyzed; and also believing that said Section is violative of Section 8, of our Bill of Rights, and, therefore, unconstitutional, the judgment of dismissal heretofore entered is set aside, and it is now ordered that the relator be discharged.

*Relator discharged.*