

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 21, 1957

Honorable Wardlow Lane, Chairman
State Affairs Committee
Texas Senate
Austin, Texas

Opinion No. WW-140

RE: Constitutionality of
House Bill No. 239

Dear Senator Lane:

Your letter dated May 7, 1957, and received in this office on May 10th, requests an opinion as to the constitutionality of House Bill No. 239 now pending before the State Affairs Committee of the Senate.

The caption of said Bill recites a purpose "to promote interracial harmony and tranquility and to that end to declare it to be the public policy of the State that the right of all people to be secure from interracial tension and unrest is vital to the health, safety and welfare of the State". Section 1 of the Bill recites that it is "the duty of the government of the State to exercise all available means and every power at its command to prevent the same so as to protect its citizens from any dangers, perils and violence which would result from interracial tension and unrest and possible violations of the laws of Texas".

Section 2 of the Act requires registration with the Secretary of State of "every person, firm, partnership, corporation or association, whether by or through its agents, servants, employees, officers, or voluntary workers or associates who or which";

1. Engages as one of its principal functions or activities the advocating of racial intergration or segregation, or

2. Whose activities opposing or favoring segregation of races cause or tend to cause racial conflicts or violence, or

3. Who or which is engaged or engages in raising or expending funds for the employment of counsel or payment of costs in connection with litigation in behalf of <u>racial integration color</u>; (Emphasis added).

Section 2 further provides:

". . . that nothing herein shall apply to the right
of the people peaceably to assemble and to petition
the government for a redress of grievances, or to an
individual freely speaking or publishing on his own
behalf in the expression of his opinion and engaging
in no other activity subject to the provisions hereof
and not acting in concert with other persons."

Section 3 sets out in detail the information that shall
be supplied with such registration.

Section 4 makes the registration records on file in the
Secretary of State's Office open to public inspection.

Section 5 prescribes penalties for violation of the
Act.

Section 9 of the Act provides:

"Sec. 9. This Act shall not apply to persons,
firms, partnerships, corporations or associations
who or which carry on such activity or business
solely through the medium of newspapers, periodicals,
magazines or other like means which are or may be
admitted under United States postal regulations as
second-class mail matter in the United States mails
as defined in Title 39, 224, United States Code
Annotated, and/or through radio, television or
facsimile broadcast or wire service operations.
This Act shall also not apply to any person, firm,
partnership, corporation, association, organization
or candidate in any political election campaign, or
to any committee, association, organization or group
of persons acting together because of activities
connected with any political campaign."

Although the Bill in question has been popularly refer-
red to as a so-called "segregation" measure, it is noted that
its provisions, generally, apply alike to those advocating
either "racial segregation" or racial integration".

We think it clear, despite the presence in both Sec-
tions 2 and 9 of provisions limiting the effects of the Bill
upon freedom of speech and freedom of press, that the Bill in
question places certain restrictions and burdens upon the exer-
cise of these two basic freedoms as guaranteed by both the
State and Federal Constitutions.

The primary question before us is whether the Bill may be upheld as a legitimate exercise of the police power of the State. It is well established in both our State and Federal law that the constitutional guarantees of freedom of speech and of the press do not deprive the State of its right to enact laws in the ligitimate exercise of the police powers, and pursuant to such power, reasonable regulations of speech and press may be adopted in order to promote the general welfare, public health, public safety and order, or morals. 16 C.J.S. 1111, Sec. 213(7). The question with which we are here concerned is not whether the Legislature has such power, but whether the means which it has employed conflict with either the State or Federal Constitutions. Dennis v United States, 1951, 341 U.S. 494.

The general rule with reference to the authority of the State to restrict freedom of speech and of press, has been stated as follows:

"The power of the State to abridge freedom of speech and of the press is the exception rather than the rule, and the Legislature may not, under the guise of the police power, arbitrarily or unnecessarily interfere with the freedom of speech and of the press, nor may the Legislature prevent the fair use of the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes may be effected through lawful means. A State may not suppress free communication of views, religious or other, under the guise of conserving desirable conditions. . . . The fundamental right to speak cannot be abridged because other persons threaten to stage a riot or because peace officers believe or are afraid that breaches of the peace will occur if rights are exercised. Speakers may not be prohibited from speaking because they may say something which will lead to disorder." 16 C.J.S. 1114, Sec. 213(7) and cases there cited.

The case of Ex Parte Meckel, (Crim. App., 1919) 220 S.W. 81, concerned the constitutional validity of a so-called "Disloyalty Statute" enacted by the Texas Legislature during World War I. Transposing the phrases of the Act, the court stated that the pertinent provisions thereof would read:

"If any person in time of war, in the presence and hearing of another person . . . use any

language . . . which language . . . is of such
nature as that in case it is said in the presence
and hearing of a citizen of the United States, it
is reasonably calculated to provoke a breach of
the peace, such person shall be guilty of a felony,
etc. . . ."

In declaring the foregoing provisions of the Act as
being violative of the Bill of Rights the court said:

"It seems too clear for discussion further,
that the gravamen of the offense thus created is
the use of language of such nature as that in
case it is uttered in the presence of a citizen
of our country it would likely cause a breach of
the peace, and that the terms of said section are
so framed as to penalize one who utters language
of such nature, whether or not same be used under
circumstances or in such presence as to make same
reasonably provocative of a breach of the peace."

In light of the foregoing authorities, and particularly
in light of the case last above cited by the Texas Court of
Criminal Appeals, let us examine the provisions of Section 2 of
House Bill No. 239. Said section requires the registration of
designated persons, groups, etc., in any of three stated con-
tingencies as follows:

1. If the advocacy of racial integration or segregation
constitutes a principal function or activity; or

2. If such activities cause or tend to cause racial
conflicts or violence; or

3. If such persons, firms, etc., are engaged, or
engages, in raising or expending funds for employment of coun-
sel or payment of costs in connection with litigation in behalf
of racial integration color.

It is readily apparent that the first two contingencies,
requiring registration are not limited to such advocacy or
activities as are reasonably calculated to provoke a breach of
the peace but apply to advocacy which was merely a principal
function or activity and such activities as caused or tended
to cause racial conflicts or violence. The Bill as so written
is not limited to such advocacy or activities which are reason-
ably calculated to create the alleged evils which the Bill
seeks to correct or prevent and hence, it cannot be supported
under the police powers of the State. It is not necessary for

us to decide whether the provision could be so revised as to render same constitutional in all its provisions.  American Federation of Labor v. Mann, 188 S.W. 2d 276.

The provision of Section 2, which provides that those "who or which is engaged or engages in raising or expending funds for the employment of counsel or payment of costs in connection with litigation in behalf of racial integration color" poses a somewhat different question.  The courts have displayed a more lenient attitude toward those statutes which require registration by persons, firms or organizations who or which undertake the public collection of funds or securing subscriptions.  Reasonable registration or identification in such cases is generally permitted.  Communist Party of U.S. v. Subversive Act. Con. Bd., 223 F. 2d 531; Thomas v. Collins, 323 U.S. 516.  Apart from the vagueness and uncertainty of the language used in said provision, it is our view that same could not be sustained upon the basis of being a reasonable requirement inasmuch as it applies with equal effect to funds expended as well as funds collected.  Hence, it would restrict individuals and others named in the expenditure of purely personal or private funds for a lawful purpose.  As to whether the provision is reasonable and can be sustained in other respects we do not here decide.

In the interest of brevity we do not undertake a discussion of other legal questions which arise in connection with the Bill.

You are, therefore, advised that in our opinion, House Bill No. 239, for reasons stated, violates both our State and Federal Constitutions and hence is unconstitutional.

## SUMMARY

House Bill 239, violates freedom of speech and freedom of press as guaranteed by both our State and Federal Constitutions and hence is unconstitutional.

APPROVED:
OPINION COMMITTEE
James N. Ludlum, Chairman
Robert O. Smith
John H. Minton
W. V. Geppert
J. C. Davis, Jr.
REVIEWED FOR ATTORNEY GENERAL

BY George P. Blackburn
LP:zt

Yours very truly,

WILL WILSON
Attorney General of Texas

By  Leonard Passmore
    Leonard Passmore
    Assistant