THE STATE OF OHIO *v.* HERSHEY.

[Cite as State v. Hershey (1972), 34 Ohio Misc. 73.]

(No. 373634—Decided April 11, 1972.)

Akron Municipal Court.

*Mr. Joseph Kodish*, chief prosecutor, for plaintiff.
*Mr. Charles D. Parke*, for defendant.

McFADDEN, J.   This case came on for trial to the court, having previously been tried to a jury which was unable to agree on a verdict.   The case was commenced by the filing of an affidavit which said in pertinent part that the defendant "did cause to be exposed to public view a flag of the United States upon which was contemptuously placed a design unlawfully in violation of Section 2921.05 of the Ohio Revised Code."   The defendant denied his guilt.

The testimony on trial developed the facts that the accused was the operator of a retail store dealing in novelties and various other items of interest to citizens at large and particularly to young people.   His place of business was located at the eastern border of the University of Akron campus.

The accused prepared and placed in the window of his place of business a display consisting primarily of a large United States flag three feet by five feet in size, which was suspended horizontally in the back of the window and below which were placed other objects among which was a goblet filled with pinkish liquid.   Attached to that goblet by a nearly invisible piece of wire was a paper representation of a large drop of blood, so positioned that it appeared to be

dripping from one of the red stripes of the flag into the goblet. Testimony developed that neither this object nor anything else was itself physically attached to the flag. The flag was placed alone in the window and displayed that way for Flag Day, June 14th. A day or two later the other objects were added to the display after which the arrest occurred on June 17, 1970.

The goblet mentioned above had affixed to it a round decal 3½ inches wide containing the figure commonly known as the peace sign superimposed on stars and stripes which might represent parts of the United States flag.

Many photographs of the window and its display were taken and exhibited at trial. They showed therein various posters which read "Legalize freedom," "End the war now," "Another family for peace," "Pray for peace," "Viet Nam, love it or leave it," and below the goblet a charred scrap of paper on which the words "take a little drink from the liar's cup" (a quotation from a song), were inscribed. Prominently displayed was a picture of a veteran's cemetery showing rows of head stones and captioned "The silent majority."

The accused was aware of the existence and content of the statute under which he was charged. He had been given a copy of it at an earlier time by the affiant Akron Police Officer Fields and had secured another copy of it from another source and had that copy at hand at the time he and his assistants prepared the display. They arranged the parts of the window display with the purpose in mind of seeking to avoid contravening the statute.

As a point of departure in considering whether a criminal statute enacted by the Ohio Legislature has been violated, one must assume that the words contained in the statute were chosen with some care and that they were intended to mean what they seem to mean, unless a good reason for thinking the contrary appears. In the statute we are concerned with here, the pertinent language used is "no person shall contemptuously place a design upon a flag of the United States." The operative verb is the word "place" and necessarily it must come into play before the

adverb "contemptuously" can be considered. It seems apparent that the Legislature intended to proscribe the placing of a design upon a flag in a contemptuous manner.

Therefore, the court must first, before taking up the question of whether contempt existed, determine whether or not in fact a design was placed on the flag. The testimony clearly established that no such design touched the flag at any point.

The statute under which defendant was cited, in its other language, also makes reference to public mutilation, burning, destroying, defilement, defacement, trampling upon, or otherwise casting of contempt upon the flag. Uncontradicted evidence shows that in this instance none of these things occurred.

The state, however, has argued that the totality of the exhibit should be considered by the court in order to arrive at a finding that contempt was shown for the flag. The difficulty with this argument is that the court, if it were to follow it, would have to read into the statute something which the Legislature did not put into it.

If it had intended to interdict the usage of the flag in any manner in connection with a protest of a political nature as admittedly was the case here since the testimony clearly showed that the window display was in opposition to the United States' continued involvement in the Vietnam war, the Legislature might have done so.

Further, if the court were to adopt the state's thesis that the totality of the exhibit supported its contention that a contemptuous placing of a design had occurred, one might as reasonably interpret the total display as showing a respectful use of the flag for purposes of political dissent as one might conclude that the usage was contemptuous in its nature, given the fact that care was taken that the flag itself be not touched.

Counsel have brought into this case arguments concerning the First Amendment guarantee of freedom of speech; and if the statute had contained language of the general nature that I have previously suggested it might have done, then that matter would be one that the court would have to

consider. That not being the case, the court need not consider that Constitutional right since it has no applicability here.

Considering also and next the decal referred to above on the goblet, the court does not find that this constitutes a violation for several reasons, the first of which is the fact that the principal thrust of the state's case went into consideration of what if anything was done to the large United States flag and only incidentally was the matter of the decal on the goblet brought into the case. In fact, it is apparent from the testimony that were this the only thing involved there would probably never have been an arrest.

Furthermore, the decal referred to is one which is commonly seen and generally accepted in trade usages on many items of merchandise to be found widely dispersed and on sale in many places of business.

Many items of merchandise were introduced as exhibits in the trial showing various combinations of stars and stripes on items so diverse as T-shirts, notebook boards, rubber ballons and a variety of decals. And evidence was adduced that these items and others similar were on sale in numerous commercial establishments in Akron and elsewhere in Ohio and that they have been sold in their tens of thousands. To conclude that the exhibition of one of these items falls within the interdiction of the statute would be to decide that contempt which Webster defines as "the condition of having no respect, concern, or regard for something," for the flag is common and widespread, a conclusion which this court is not prepared to make and in fact does not believe to be true.

It is the finding of the court that the state has not maintained its duty to establish guilt and therefore the accused is acquitted.

*Defendant acquitted.*