The State of Ohio, Appellant and Cross-Appellee, *v.*
Kasnett, Appellee and Cross-Appellant.

(No. 72-584—Decided June 6, 1973.)

*Mr. Gerald A. Mollica,* city solicitor, *Mr. Claire M. Ball, Jr.,* and *Mr. Michael Nolan,* for appellant and cross-appellee.

*Messrs. Lavelle & Yanity* and *Mr. L. Alan Goldsberry,* for appellee and cross-appellant.

PAUL W. BROWN, J. At the outset, it must be observed that the majority of the Court of Appeals was anatomically in error in concluding that the flag was "over the anus"; and that the conclusion in the concurring opinion, that the young man sat on the flag, does not seem to be material to a charge of having a flag sewn on his pants pocket.

R. C. 2921.05 cannot be said to specifically prohibit the use of the flag as an article of clothing, as an attachment or a decoration or a patch thereon. If the General Assembly chose to proscribe the wearing of the flag as an item of wearing apparel, there is little doubt that it could have done so.

The question before us is whether a proscription of such *use* may be derived from the prohibition of acts which "defile," "deface," or "otherwise cast contempt upon" the flag, or, if such a general proscription of use may not be derived from the quoted language, whether a more specific proscription may be derived from it. In other words, does that language of the statute proscribe wearing the flag over a particular part of the body, but permit the flag to be worn over some other part of the body? Under the statute, is a flag worn by a policeman over his heart, or on his sleeve, or on his helmet permissible, and the same flag worn by a student impermissible depending upon which part of his anatomy it is upon or near?

If these distinctions must be made, then the traditional task of line-drawing becomes most difficult, complicated by the fact that the statute concerns a genuinely sacred national symbol, acts concerning which evoke a variety of unpredictable emotional responses because the feelings, opinions and beliefs that dictate these responses are subjective, and exist only in the mind of the viewer.

That consideration of such subjective responses produces a variety of conclusions is demonstrated by the conflicting Ohio appellate court decisions, which have seldom been unanimous.[2] This conflict is further evidenced by the generalization in the annotation in 41 A. L. R. 3d 502, at 505, where we find the following: "Generally the courts have determined what conduct constitutes a violation of a flag desecration statute on a case-by-case basis, scrutinizing the particular facts and circumstances of each individual prosecution."

Although *ad hoc* determinations may be satisfactory, or at least acceptable, in refining definitions in other areas of the law, they should not be considered to be so in defining the limits of crimes.

---

[2]See *State* v. *Saionz* (1969), 23 Ohio App. 2d 79; *State* v. *Kasnett* (1972), 30 Ohio App. 2d 77; *State* v. *Liska* (1971), 32 Ohio App. 2d 317; *Cincinnati* v. *Bunch* (1971), 32 Ohio App. 2d 161; *State* v. *Mitchell* (1972), 32 Ohio App. 2d 16. See, also, *State* v. *Saulino* (1971), 29 Ohio Misc. 25; *State* v. *Hershey* (1972), 34 Ohio Misc. 73.

"* * * a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess of its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, 391.

That is especially true in this case, where, on its particular facts, the vagueness of R. C. 2921.05 becomes apparent in the presence of the severe sanctions imposed. We believe that statutory vagueness must be limited by strict standards in areas as sensitive as that which surrounds so sacred a symbol as the American flag.

Since judges disagree as to whether the language of the flag desecration statute proscribes the use of a flag as wearing apparel, or as a decoration, or as a patch upon wearing apparel, and disagree as to the reasons for including or excluding certain locations on one's person for displaying such flags, the judicial line-drawing has become so involved with the due process problems of "fair warning" that it ought not be attempted.

"* * *No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the state commands or forbids." *Lanzetta* v. *New Jersey* (1939), 306 U. S. 451, 453.

In this case, the court's options are either to narrow or to void the statute, for as it stands it fails to contain such predictable indicia of guilt so as to provide fair notice of what acts are punishable thereunder, and hence, as to the specific act concerned, violates the due process requirement of the state and federal constitutions. See *Ashton* v. *Kentucky* (1966), 384 U. S. 195; *Giacco* v. *Pennsylvania* (1966), 382 U. S. 399; *Wright* v. *Georgia* (1963), 373 U. S. 284; *United States* v. *Cardiff* (1952), 344 U. S. 174.

We choose therefore to consider that the meaning of the ambiguous words must be determined under the doctrines of *ejusdem generis* and *noscitur a sociis*, as was done in *State* v. *Aspell* (1967), 10 Ohio St. 2d 1, and in *State* v. *Saionz* (1969), 23 Ohio App. 2d 79.

In view of the foregoing, we conclude that in order to avoid constitutionally impermissible vagueness in R. C. 2921.05, the words "defile," "deface," and "cast contempt upon," when read in association with the specific words "mutilate, burn, destroy" and "trample upon," cannot be given a loose or expanded meaning and must be held to denote a legislative intent to proscribe only contemptuous physical acts of destruction,[3] mutilation, defilement or defacement of the flag. Thus, the sole act of wearing it on one's clothing cannot be said to fall within the prohibition of the statute.

The charge contained in the affidavit and the facts disclosed by the record fail to support the conviction under the statute, as so construed. It is therefore unnecessary for us to pass upon the question raised by the cross-appeal. The judgment of the Court of Appeals is reversed and the cause is remanded to the trial court with directions to discharge the defendant.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

---

[3]Intent is material. Throughout the statute the word "contemptuous" is used, and even in the sentence which is here involved the words "otherwise cast contempt" indicate the necessity for any of the acts described to be done other than innocently or with a benign intent. Also note that, as bearing upon legislative intent, the General Assembly, in its 1967 amendment of this statute, added the words "contemptuously" and "contemptuous."