**Gregory Lee JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 372–86.

Court of Criminal Appeals of Texas,
En Banc.

April 20, 1988.

Rehearing Denied June 8, 1988.

Stay Granted and Mandate Recalled
Oct. 11, 1988.
See 109 S.Ct. 216.

Certiorari Granted Oct. 17, 1988.
See 109 S.Ct. 257.

Stanley I. Weinberg, Douglas W. Skemp, Dallas, for appellant.

Henry Wade, Former Dist. Atty. and John Vance, Dist. Atty., and Kathi Alyce Drew, John D. Nation and Mike Gillett, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted, after a jury trial, of desecration of a venerated object. V.T.C.A., Penal Code § 42.09(a)(3).[1] Punishment was assessed at one year's confinement in the Dallas County Jail and a $2,000 fine. The Dallas Court of Appeals affirmed. *Johnson v. State*, 706 S.W.2d 120 (Tex.App.—Dallas 1986). We granted the appellant's petition for discretionary review to determine (1) whether V.T.C.A. Penal Code, § 42.09(a)(3) violates Art. I, sec. 8 of the Texas Constitution or the First Amendment to the United States Constitution, and (2) whether the prosecutor's closing argument during the punishment phase of the trial denied appellant a fair trial.[2] We hold that the First Amendment to the U.S. Constitution obviates appellant's conviction under section 42.09(a)(3) and we will remand.

Appellant was arrested during the Republican National Convention in Dallas on August 22, 1984. He was involved with a series of demonstrations against the policies of the Reagan Administration and the Republican Party. These protests culminated with a rally in front of the Dallas City Hall with the burning of an American flag and political chants. The record indi-

---

1. Sec. 42.09 Desecration of Venerated Object.
   (a) A person commits an offense if he intentionally or knowingly desecrates: ...
      (3) A state or national flag.
   (b) For purposes of this section, "desecrate" means deface, damage, or otherwise physical-ly mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action.

2. The reason review was granted is found in Tex.R.App.Pro. 200(c)(2 & 3).

cates that these demonstrations were not violent and that police officers and representatives of the news media were present. After the flag had been burned, a spectator gathered the remains for burial in his backyard. Approximately 30–45 minutes later, more Dallas police arrived to arrest appellant and several other demonstrators.[3]

The Court of Appeals rejected appellant's claim that section 42.09 is impermissibly vague, holding that the statute gives adequate warning as to what conduct is prohibited. That court also found that appellant's conduct amounted to protected speech, within the meaning of the First Amendment, but, relying on *Deeds v. State,* 474 S.W.2d 718 (Tex.Cr.App.1971),[4] found that the State's interest in regulating this symbolic speech outweighed appellant's First Amendment rights.[5]

In his petition for discretionary review, appellant reurges his arguments made in the Court of Appeals on the constitutionality of the statute under which he was convicted.[6] This argument asserts vagueness and overbreadth as reasons for declaring section 42.09 unconstitutional. The State asserts two interests in support of section 42.09(a)(3): (1) to prevent breaches of the peace and (2) to preserve the flag as a symbol of national unity and counters by restating the positions advanced by the Court of Appeals.

■ In analyzing a symbolic speech question, the proper methodology requires the reviewing court to first determine whether a defendant's acts fall within the First Amendment. See, e.g., *Spence v. Washington* 418 U.S. 405, 94 S.Ct. 2727, 41

---

**3.** On the same day as appellant's arrest, a number of demonstrators burned the national flag of a foreign country. This action lead to a physical brawl; nevertheless, no arrests under section 42.09 were made in connection with the incident.

**4.** Today, *Deeds,* supra, is no longer adequate authority. Our holding in *Deeds* that former Article 152, Vernon's Ann.P.C. was consistent with the test for regulation of symbolic speech enunciated in *U.S. v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), has been rejected by the Supreme Court. *Spence v. Washington,* 418 U.S. 405, 414 n. 8, 94 S.Ct. 2727, 2732 n. 8, 41 L.Ed.2d 842 (1974). The Supreme Court reached this result because a State's interest in preserving the flag as a national symbol focuses on the communicative aspect of flag desecration, that of denigrating the nation and, specifically, the flag as its icon. *Id.* In addition, the Supreme Court's most recent pronouncement on overbreadth analysis in First Amendment contexts suggests that our refusal in *Deeds* to consider overbreadth is untenable today. See *Boos v. Barry,* — U.S. —, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988).

This Court's other major discussion of former article 152 occurred in *Delorme v. State,* 488 S.W.2d 808 (Tex.Cr.App.1973). Like *Deeds,* the *Delorme* decision is of questionable value today. In addition to relying on *Deeds,* the *Delorme* opinion followed a number of cases from other jurisdictions. *State v. Van Camp,* 6 Conn.Cir. 609, 281 A.2d 584 (1971); *Commonwealth v. Goguen,* 361 Mass. 846, 279 N.E.2d 666 (1972) (conviction later reversed as violative of the First Amendment *sub. nom. Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)); *State v. Kasnett,* 30 Ohio App.2d 77, 283 N.E.2d 636 (1972), *rev'd* 34 Ohio St.2d 193, 297

N.E.2d 537 (1973). Of the cases expressly followed in *Delorme,* only *Van Camp,* supra, decided by an intermediate appellate court in Connecticut, has not been overturned by a higher court.

**5.** The Dallas court also rejected points of error concerning the admission of video tape depictions of extraneous misconduct by others, a jury instruction on the law of parties, admission of appellant's prior convictions, and the prosecutor's argument during the punishment phase of the trial. Although we granted review on the question concerning the jury argument, none of these points are relevant to our ultimate disposition of this case.

**6.** In the Court of Appeals, appellant assigned eight separate points of error on the issue of free speech. Of these eight points, half were based exclusively on Texas law. The Court of Appeals grouped these eight points together and purportedly decided them on both state and federal grounds. Their analysis, however, depended completely on cases which applied only the federal constitution. Despite that court's claim to have disposed of the State law issues, those questions are yet to be decided.

When a Court of Appeals is presented with both state and federal bases for a proposition of constitutional law and fails to address the state law aspects of the question, this Court's procedure is to review the correctness of the Court of Appeal's application of federal law and then remand, if necessary, for a determination of the state law issues. *McCambridge v. State,* 712 S.W.2d 499, 501–02 n. 9 (Tex.Cr.App.1986). We will not, therefore, address article I, sec. 8 of the Texas Constitution in this opinion.

L.Ed.2d 842 (1974); *Tinker v. Des Moines Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Monroe v. State Court of Fulton Co.*, 739 F.2d 568 (11th Cir.1984); c.f. *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The Dallas court held that, by burning a flag, appellant "intended to convey a particularized message ... and that this message was very likely to be understood by those who viewed it." *Johnson*, supra at 123. There is no reason for us to reach a different conclusion. The United States Supreme Court has held a number of activities to be protected "speech." *Spence*, supra (affixing a peace symbol to a flag); *Tinker*, supra (wearing of black arm bands); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 632–34, 63 S.Ct. 1178, 1182–83, 87 L.Ed. 1628 (1943) (*not* saluting the flag being protected by the First Amendment's speech provision); c.f. *O'Brien*, supra (Court refusing to decide whether draft card burning is speech). Given the context in which appellant burned the flag, "it would have been difficult for the vast majority of citizens to miss the drift of appellant's point at the time that he made it." *Spence*, supra 418 U.S. at 410, 94 S.Ct. at 2730. Conduct falls within the ambit of the First Amendment when the actor shows "an intent to convey a particularized message ... and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410–11, 94 S.Ct. at 2730. Given the context of an organized demonstration, speeches, slogans, and the distribution of literature, anyone who observed appellant's act would have understood the message that appellant intended to convey. The act for which appellant was convicted was clearly "speech" contemplated by the First Amendment.

Falling within the umbrella of First Amendment protection will not shield speech from all government regulations. E.g., *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). Therefore, we must undertake to weigh the interests which the State asserts in support of section 42.09(a)(3).

■ The first interest averred offered by the State is the prevention of breaches of the peace which would likely be attendant to acts of flag desecration. A State may prevent *breaches of the peace* by limiting speech. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); see also *Ex parte Meckel*, 87 Tex. Cr.R. 120, 220 S.W. 81 (1919). Legitimacy of a State interest, however, is not enough to bring the regulation of protected speech into compliance with First Amendment protection. The Supreme Court has repeatedly held that restrictions on speech must be very carefully tailored to meet a state's legitimate interests.[7]

Limiting the criminalization of flag desecration to incidents where it is likely to cause "serious offense" is a proper step toward narrowly tailoring the statute to the State's interest. Still, section 42.-09(a)(3) is so broad that it may be used to punish protected conduct which has no propensity to result in breaches of the peace. "Serious offense" does not always result in a breach of the peace. The protest in this case did not lead to violence. As with most other protests of this nature, police were present at the scene. A witness was obviously "seriously offended" by appellant's

---

7. *O'Brien*, supra 391 U.S. at 377, 88 S.Ct. at 1679 (A "government regulation is sufficiently justified ... if the incidental restriction on alleged First Amendment freedoms is no greater than is *essential* to the furtherance of that interest.") (all emphasis is the author's unless otherwise noted). *Barnette*, supra 319 U.S. at 639, 63 S.Ct. at 1186 ("The right of a State to regulate, for example, a public utility may well include, so far as the due process test is concerned, power to impose all of the restrictions which a legislature may have a "rational basis" for adopting. But freedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect."). See also *Boos v. Barry*, —— U.S. ——, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (discussed infra at page 96).

conduct because he gathered the burned flag and buried it at his home; nevertheless, though "seriously offended", this man was not moved to violence. "Serious offense" occurred, but there was no breach of peace nor does the record reflect that the situation was potentially explosive. One cannot equate "serious offense" with incitement to breach the peace.

When a statute which restricts speech is under attack for overbreadth, the existence of another legislative alternative which would further the goal of the challenged statute may be used to prove that the challenged statute is overbroad. Very recently, the Supreme Court decided a challenge to an ordinance in the District of Columbia. *Boos v. Barry*, — U.S. —, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). The ordinance made it unlawful to, within 500 feet of a foreign embassy, display any sign that tends to bring the foreign government into "public odium or public disrepute." Noting that Congress had provided a less restrictive alternative, 18 U.S.C. § 112(b)(2), which served the same interest as the challenged ordinance, the Court wrote:

> [W]e conclude that the availability of alternatives such as § 112 amply demonstrates that the display clause is not crafted with sufficient precision to withstand First Amendment scrutiny. It may serve an interest in protecting the dignity of foreign missions, but it is not narrowly tailored; a less restrictive alternative is readily available. Thus, even assuming for present purposes that the dignity interest is "compelling," we hold that the display clause of § 22–1115 is inconsistent with the First Amendment.

*Boos*, supra — U.S. at —, 108 S.Ct. at 1168.

For example, section 42.01 of the penal code states:

> (a) A person commits an offense if he intentionally or knowingly:

> (1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance *tends to incite an immediate breach of the peace;*

> (2) makes an offensive gesture or display in a public place, and the gesture or display *tends to incite an immediate breach of the peace....*

V.T.C.A. Penal Code, § 42.01 (emphasis added). The existence of a statutory scheme other than section 42.09 which addresses the same basic interest in a less restrictive manner indicates that the legislature is aware of and able to implement an alternative to the language of section 42.-09. Section 42.01, like section 112 in *Boos*, proves that the challenged statute, as it relates to breaches of the peace, is too broad for First Amendment purposes.

The second interest asserted by the State is that of preserving the flag as a symbol of unity. In *Spence*, supra, the Court refused to decide the validity of a state's interest in preserving the flag as a national symbol. *Id.* 418 U.S. at 413–14, 94 S.Ct. at 2731–32. Instead, the Court assumed arguendo the validity of the interest, and held Washington's flag misuse statute to be unconstitutional. *Id.* at 414–15, 94 S.Ct. at 2732–33.[8] The Supreme Court specifically reserved judgment on the question of flag *desecration.* This indicates that precedent prior to *Spence* does not necessarily require rejecting the State's interest in preserving the flag as a symbol. There is some precedent, however, which seems to indicate the weight this interest might be given in a balancing process.

In *Barnette*, supra, the parents of a child complained of a West Virginia law requiring children to salute the flag and recite the Pledge of Allegiance. Failure to comply resulted in suspension from school. The goal of the West Virginia statute was to promote national unity. In order for

---

**8.** Spence had been prosecuted for violating Washington's misuse statute. This statute forbade affixing any mark, word, picture, design, etc. to a flag. The State of Washington also criminalized flag desecration. This provision is in a separate section, however, and Spence was not charged with its violation. *Id.* at 406–07, 94 S.Ct. at 2728–29. The Court specifically reserved the question of protecting the flag as a symbol from desecration. *Id.* at 415, 94 S.Ct. at 2732–33.

this interest to be sufficient to abridge activity protected by the First Amendment, it must be necessary to prevent "grave and immediate danger" to that interest.[9] In testing this asserted state interest, we will examine its propriety and then the immediacy of the danger to the interest.

The interest asserted in *Barnette* is distinguishable from the State's desire to preserve the flag as a symbol of national unity. The two goals, however, are sufficiently similar that the Supreme Court's discussion of promoting national unity is relevant to our decision. Justice Jackson wrote:

> To believe that patriotism will not flourish if patriotic ceremonies are voluntary and spontaneous instead of a compulsory routine is to make an unflattering estimate of the appeal of our institutions to free minds. We can have intellectual individualism and the rich cultural diversities that we owe to exceptional minds only at the price of occasional eccentricity and abnormal attitudes. When they are so harmless to others or to the State as those we deal with here, the price is not too great. But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.
>
> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.

*Id.* 319 U.S. at 641–42, 63 S.Ct. at 1187. Recognizing that the right to differ is the centerpiece of our First Amendment freedoms, a government cannot mandate by fiat a feeling of unity in its citizens.

Therefore, that very same government cannot carve out a symbol of unity and prescribe a set of approved messages to be associated with that symbol when it cannot mandate the status or feeling the symbol purports to represent.

If the State has a legitimate interest in promoting a State approved symbol of unity, that interest is not so compelling as to essentially license the flag's use for only the promotion of governmental status quo. In its brief, the State does not aver why the American flag is in such "grave and immediate danger" of losing the ability to rouse feelings of unity or patriotism such that section 42.09(a)(3) is "essential" to prevent its devaluation into a meaningless piece of cloth. We do not believe such a danger is present. Because *Barnette, O'Brien,* and *Boos* would require such a threat in order to uphold violations of federal free speech guarantees, we must hold that the interest of providing a symbol of unity is inadequate to support section 42.09(a)(3).

We hold that section 42.09(a)(3) may not be used to punish acts of flag desecration when such conduct falls within the protections of the First Amendment. We express no view as to whether the State may prosecute acts of flag desecration which do not constitute speech under the First Amendment. Because of this holding, we will not reach the portions of the appellant's argument which challenge the facial validity of the statute on grounds of vagueness. This Court will not pass on the facial constitutionality of a statute unless it is absolutely necessary for the disposition of the case. See generally *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Thus, our holding that the statute is unconstitutional as applied to this appellant renders a facial determination unnecessary. In addition, we need not reach appellant's contention concerning the prosecutor's jury argument in the punishment phase of the trial.[10]

---

**9.** See note 5, supra, for the full text of this standard.

**10.** It may appear anomalous that we have decided the constitutionality of the section 42.-09(a)(3), as applied, before reaching the jury

argument ground for review. It should be noted that this alleged error occurred during the punishment phase of the trial. A reversal on this point would not affect the validity of appellant's conviction. Instead, it would merely result in a remand to the trial court for a new

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court for dismissal of the information.

ONION, P.J., and W.C. DAVIS, J., dissent for the reason that they believe the Court of Appeals was correct.

McCORMICK, J., dissents.

MILLER, Judge, dissenting.

I do not agree with the majority that the State's interest in providing the flag as a symbol of unity is inadequate to support Sec. 42.09(a)(3), V.A.P.C. I find the discussion of the symbolism of the flag in this Court's unanimous opinion in *Deeds v. State,* 474 S.W.2d 718 (Tex.Cr.App.1972), both viable and highly persuasive, and I would apply the rationale of that case to the present cause.

In *Deeds,* supra, we held that the State had a right to regulate the nonspeech aspect of the burning of the flag of the United States. See *Deeds,* supra at 721, citing *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In considering the *Deeds* discussion about our national flag and the facts of this flag *desecration* case, I believe the regulation of appellant's nonverbal conduct, albeit admittedly symbolic speech, under Sec. 42.-09(a)(3) is justified. The valid State interest of preserving the flag as a symbol of national unity clearly, in my view, supersedes whatever first amendment rights this appellant sought to assert. See dissenting opinions of Chief Justice Warren and Justices Black, Fortas, and White, in *Street v. New York,* 394 U.S. 576, 604, 89 S.Ct. 1354, 1371–72, 22 L.Ed.2d 572 (1969); *Halter v. Nebraska,* 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907). As noted in *Deeds,* supra:

"Since the flag symbolizes the entire nation, not just one particular political philosophy, the state may determine that *it* be kept above the turmoil created by

competing ideologies." (emphasis supplied)

Though it may not pass muster in other fact situations or under other statutes, see e.g. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1973), Sec. 42.-09, supra, passes constitutional muster in its application to destroying a United States flag, even as an exercise of "speech", in a manner "the actor knows will seriously offend" persons observing the action. Section 42.09, supra, is here being narrowly applied to a fact situation involving total destruction of the United States' national symbol. I do not agree that the statute is unconstitutional as applied to appellant or that he has grounds to make such challenge. Cf. *Briggs v. State,* 740 S.W.2d 803 (Tex.Cr.App.1987) (defendant must show that statute is unconstitutional as applied to him in his situation).

I dissent.

---

hearing on punishment. Art. 44.29(b) V.A.C.C.P. Thus, a complete disposition of this case requires us to first decide the validity of the conviction and then to proceed, if necessary, to punishment.